LUCE & CO., S. en C., Depositor, v. EUFROSINA CIANCHINI WIDOW OF SANTIAGO, Appellee. ROSENDA SANTIAGO RIVERA ET AL., Appellants.

No. 10684. Argued February 5, 1953.—Decided March 8, 1954.

*Córdova & González, Eladio Rodríguez Otero, J. Paniagua Se-rracante* for appellants. *José A. Poventud* for appellee. *Fernando Beiró Rovira* for depositor.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

This is an appeal from a judgment rendered by the Ponce Section of the former District Court in a proceeding for deposit, decreeing that the rents deposited in Court by Luce & Co., *S. en C.*, the lessee of a rural property called Cayure, located at Barrio Jauca of the municipality of Santa Isabel, Puerto Rico, belong to Eufrosina Cianchini widow of Santiago.

The aforesaid property Cayure belonged to Florencio Santiago who was married to Eufrosina Cianchini. Florencio died on September 6, 1924 under open will, and by provision thereof the usufruct of the property Cayure belonged to Clotilde Santiago Rivera, Florencio's brother, reserving the naked property to Clotilde himself and to his sisters Teresa, Dolores, Rosenda, María and Josefa Santiago Rivera.

On December 8, 1939 Clotilde leased the aforesaid property to Luce & Co., *S. en C.*, for a term of 10 years as of July 1, 1941 terminating in June 1951, for a yearly rent of $4,500, paid yearly in advance.

On January 9, 1949 Clotilde died. When his usufruct was thus extinguished [1] a controversy arose between Eufrosina Cianchini, widow of Florencio Santiago and the heirs of the latter, as to whether the rents of the Cayure property belonged to the widow or to the voluntary heirs of Florencio. Meanwhile, all the interested parties agreed to an extension of the lease contract until the date originally agreed between Luce & Co. and Clotilde, *i.e.*, June 1951.

In view of the conflicting claims, Luce & Co., *S. en C.*, proceeded to deposit in court the rents corresponding to the year which began July 1, 1949 and subsequently deposited the rents corresponding to the years commencing July 1, 1950 and July 1, 1951. [2]

The parties appeared filing conflicting claims, each alleging their right to the rents deposited.

The widow of Santiago holds that she is the only person entitled to the money and bases her claim on certain legal provisions, on clauses 13, 19, 21 and 22 of the will executed in 1923 by her husband Florencio Santiago and on clauses 1, 5, 8 and 12 of the partition deed of the inheritance estate at his death, executed on April 20, 1925. The widow also alleged that the voluntary heirs are precluded from claiming the rent because they accepted the partition deed where the effectiveness of her right to enjoy the usufruct from the Cayure property at Clotilde's death, is recognized; that the claim of the voluntary heirs was not filed within the four years after the partition contract was perfected; that they did not challenge the usufructuary right or interest of Eufro-

---

[1] Section 441, paragraph 1, of the Civil Code (1930 ed.) provides that: "Usufruct is extinguished: 1. By the death of the usufructuary. . . . ."

[2] When the lease contract expired in 1951 all the interested parties agreed to renew the same until June 30, 1956, under the same clauses and stipulations, except the yearly rent which was increased to $6,000.

sina Cianchini within the 15 years prior to the filing of their complaint, there having elapsed more than 24 years since the death of the testator, on which date, Eufrosina alleges to have acquired her usufructuary right or interest in the Cayure property.

In their answer to Eufrosina's claim, the voluntary heirs of Florencio allege that in the partition deed no usufructuary right was accepted or recognized in favor of the surviving spouse, nor was the will interpreted in the manner alleged by the claimant. The voluntary heirs denied that at Clotilde's death, Eufrosina was enjoying the usufruct constituted in her husband's will, and further alleged that Eufrosina rejected the usufruct from all the real properties of the ancestor which was offered to her in the will, but chose the widow's usufructuary quota to which she was entitled by law.

The case was submitted to the trial court by stipulation of the parties on the facts signed by all the parties. Judgment was subsequently rendered giving rise to the present appeal.

The trial court is charged with the following single error:

"The lower court erred in construing the will and the partition deed to mean that the usufruct of the Cayure property belonged to the defendant (sic) Eufrosina Cianchini at the death of Clotilde Santiago, and in not holding that the full ownership of the property belonged to the appellant heirs of ˉlorencio Santiago at the death of Clotilde Santiago."

The case having been submitted, as we stated before, on a stipulation of facts, we are in the same position as the trial court to examine the questions involved herein.

At the outset, we shall examine the provisions of the will and of the partition deed which are in controversy.

Clause 19 of the will states:

"He declares: that he also bequeaths to his aforesaid wife Eufrosina Cianchini all the jewels, furniture, utensils and implements existing at his death, in his house of Aibonito, as well

as in the house, all his automobiles, saddle horses and hackneys including the carriages, twenty milk cows and a breeder bull chosen by her.

"By jewels is meant all the jewels of their personal use, without distinction. *If his aforesaid wife would waive the usufructuary quota to which she is entitled by law and which is smaller, he names her usufructuary heiress during her lifetime if she remains a widow, or until her remarriage, of all those immovables existing* in lands, houses or buildings of which *he had* made *no* other disposition in this will, and she may and must receive all its proceeds, rents, utility and advantages without any limitation or restriction whatsoever, and she may alter their form as she deems convenient, and if any of said properties might be consumed or destroyed by use or by accident, the heirs of the naked property can make no claims, and in the doubtful case that they might, the part which is subject to claim shall be considered as bequeathed to his aforesaid wife: he orders that she be relieved and excused from inventories, assessments or descriptions of property and from furnishing any bond, absolutely forbidding that she be molested, or requested to give any account of anything, even if not provided for herein." (Italics ours.)

Clause 21 of the aforesaid will reads:

"He declares: that if at the death of his brother Clotilde Santiago, his present wife were *still enjoying the usufruct granted to her herein,* the property which he owns and which he has given to him as usufruct under clause 13 [3] shall pass to his aforesaid wife that she may continue receiving the usufruct in the same conditions that he has given her the other immovables." (Italics ours.)

The eleventh section of Clause No. 1 of the partition deed executed on April 20, 1925 reads:

"Eleventh: that if at the death of Clotilde Santiago, his wife were enjoying her usufruct, the property which he leaves to said brother in usufruct shall pass to his wife under the same conditions."

---

[3] Among the property given in usufruct to Clotilde under this clause of the will, is the Cayure farm.

In the same partition deed, at p. 156, Clotilde is adjudicated the usufruct of the Cayure farm and it is set forth that as to "this property and the afore-mentioned the deceased made the following provision also:

"21.—He declares: that if at the death of his brother Clotilde Santiago, his present wife were still enjoying the usufruct granted to her herein, the property which he owns and which he has given to him as usufruct under clause 13 shall pass to his aforesaid wife that she may continue receiving the usufruct in the same conditions that he has given her the other immovables."

The only question actually raised for decision is what was Florencio Santiago Rivera's intention in drafting clauses 19 and 21 of his will. As a complementary question, we must determine the effect on that intention and those provisions of the eleventh Section of Clause 1 of the latter partition deed. Ultimately, we shall discuss the special defenses raised in the lower court and repeated in this appeal by the widow of the testator, the first, as to the prohibition imposed by the testator of challenging the will and the second, as to the prescription of the action.

In cases such as this one, which involves the determination of the testator's intention, it is a rule of legal hermeneutics that in case of doubt the intention of the testator should prevail over the literal meaning of the words used in the will. Section 624 of the Civil Code (1930 ed.).[4] *Junghanns* v. *Cornell University*, 71 P.R.R. 630, 639. Since the interested parties do not agree as to the interpretation of the provisions at issue herein, that task belongs to the courts. 5 Manresa, *Comentarios al Código Civil Español*,

---

[4] Section 624 of the Civil Code (1930 ed.) reads:

"Section 624.—Every testamentary provision shall be understood in the literal meaning of its words, unless it clearly appears that the will of the testator was different. In case of doubt, that which appears most in accordance with the intention of the testator, according to the tenor of the same will, shall be observed.

"A testator can not prohibit the contest of his will in the cases in which there exists nullity specified by law."

454. Now then, in order that the courts may exercise the power of interpretation, the clause of the will must be vague or ambiguous. 8 Colin y Capitant, *Derecho Civil*, 12. And that is precisely the case here. The widow of Santiago holds that the intention of the testator manifested in clause 19 of the will was to allow her to choose the greater usufruct and that he manifested his intention in clause 21 to the effect that she should be substituted for his brother Clotilde in the enjoyment of the usufruct of the Cayure farm, irrespective of the usufruct chosen by her, as long as it were the greater one and that she remained unmarried, as she has done. Let us consider whether she is correct.

We know that the widow's usufructuary quota is the legal portion, 14 Scaevola, *Código Civil*, 712 which the law reserves for the surviving spouse, who is a forced heir.[5] Section 735 in connection with § 736, paragraph 3 of the Civil Code (1930 ed.) The testator cannot impose any burden or conditions of any kind whatsoever upon the legal portion. Section 741; 5 Valverde *Tratado de Derecho Civil Español* 274; 6 Manresa, *op. cit.*, 418, 602. Therefore, a provision by the testator to the effect that the legal usufruct of his surviving spouse would be subject to a resolutory condition should she remarry, shall be considered as not imposed, because it is contrary to law as set forth in the afore-cited § 741. Section 721;[6] 6 Manresa, *op. cit.*, 297; 14 Scaevola, *op. cit.*, 676, 808. A provision to that effect would mean that the legal usufruct would be extinguished if the resolutory condition were fulfilled. Section 441, paragraph 2.[7] However, as Manresa says, *op. cit.*, Vol 6, p. 609, that paragraph

---

[5] The commentators do not agree on this particular, but we favor the Spanish doctrine and jurisprudence which establish the status of forced heir of the surviving spouse. 14 Scaevola, *Código Civil*, 213 and 678; 6 Manresa, *op. cit.*, 302. This status is given by the very § § 735 and 736 of our Civil Code. *Contra:* 8 Colin y Capitant, *op. cit.*, 327.

[6] That section provides:

"Section 721.—Impossible conditions and those contrary to law and good morals shall be considered as not imposed and shall not prejudice the heir or legatee in any manner whatsoever, even when the testator disposes otherwise."

does not apply to the widow's usufructuary quota since "the usufruct granted to the surviving spouse is for life, there is no other time or *condition* than the span of life of the usufructuary . . ." (Italics ours.) "The legal portion—Manresa continues, *op. cit.*, p. 292—proceeds from the patrimony of its owner, it ceases to belong to him: he may enjoy it but he may not dispose of it. The rights of the testator over it or over the right of which the legal portion consists, as regards the power to dispose of it, are equal to that of a stranger, he may not dispose of it, therefore, *he may in no way encumber, limit or modify that right* . . . . ." (Italics ours.) To that effect Scaevola indicates, *op. cit.*, Vol 14, p. 808, that the usufructuary quota "is . . . exempted from any condition, because its nature makes it invulnerable to any encumbrance."

■ Aware of that situation,[8] the testator herein, Florencio Santiago, interested in inducing his wife to remain a widow after his death, decided to offer her a usufruct, which in his opinion, was of greater value and amount than the widow's usufructuary quota, this legacy being subject to the condition that she waived the other usufruct and that she remained a widow. Such a provision or condition is valid. Section 722, paragraph 2, Civil Code. That was, undoubtedly, the intention of the testator in so drafting clause 19 and in that we agree with the lower court.

■ Now then, pursuant to § 764 of the Civil Code[9] the right of the widow of Santiago was limited to one half of the

---

[7] That section provides: "Usufruct is extinguished: . . . 2. By the expiration of the period for which it was established, or by the fulfillment of the resultory conditions express in the need establishment the usufruct. . . . ."

[8] We say that the testator was aware of that situation inasmuch as it is the case of an open will, which was, undoubtedly, drafted by the notary, a person well acquainted with the law, following instructions of the testator. 3 Oyuelos, *Digesto*, 303.

[9] Said Section reads:

"Section 764.—If the testator should leave neither legitimate ascendants, nor descendants, the surviving spouse shall be entitled to one-half of the estate also in usufruct."

inheritance in usufruct. In accordance with that, her usufructuary quota amounted to $187,116.19 while the usufruct on the property not disposed of by the testator only amounted to $145,561.98. The widow of Santiago chose to accept the legal usufruct which, as we have seen, resulted in a greater amount, contrary to what the testator believed. We can accept that her refusal of the voluntary usufruct was not due to the condition imposed on her by the testator. As a matter of fact, Eufrosina has remained a widow. However, we cannot agree with the trial court that "the intention of the testator was for the widow to enjoy the greater usufruct as long as she observed the limitation imposed by him," nor can we agree that the fact that the greater usufruct was the widow's usufructuary quota, which the testator believed was the smaller, did not render void the will of the testator to increase the widow's usufructuary quota. We understand, on the contrary, that the intention of the testator was, as we said before, to force the widow to remain unmarried by way of the resolutory condition stated. However, by accepting the usufructuary quota, she was not bound, *nor is she still bound* to fulfill the obligation which the testator stipulated. That as a matter of fact she has fulfilled it *until now* is a matter which goes beyond the scope of the legal questions.

 Appellee alleges that clause 21 of the will, in speaking of the "usufruct granted herein" refers to either of the two chosen by the widow, whichever it may be. Again we disagree. The testator, by virtue of his will, granted Eufrosina a single usufruct, to wit, the usufruct of the property not disposed of by him. The other, the widow's usufructuary quota was not granted to her by the testator or the will. The usufructuary quota is granted to her by law, and in this specific case by the afore-cited § 764. 14 Scaevola, *Código Civil*, 808;[10] 6 Manresa *op. cit.* 421. It is so much so that

---

[10] Scaevola states:

". . . No term may be fixed for the surviving spouse's usufructuary quota, since, by *operation of law* it lasts the lifetime of the surviving spouse. And it is likewise exempt from every condition, because its character

the testator could not have deprived Eufrosina of said usufruct nor imposed a condition, lien or encumbrance thereon. On the other hand, the testator was not bound to grant Eufrosina any usufruct on the property which he did not dispose. Once the testator established that usufructuary right on such property, he actually granted Eufrosina a usufructuary right to which ordinarily she would not have been entitled. Thus, we have no doubt that in drafting clause 21 the testator, who believed that the voluntary usufruct would be greater, was sure that his wife would accept it. In view of that, he established a successive usufruct as to the Cayure farm in favor of Eufrosina, as long as she were still enjoying the voluntary usufruct.

Now then, the usufructuary right in the Cayure farm in favor of Eufrosina was subject to two conditions: 1st—to a condition precedent which depended on her acceptance of the usufruct which the will granted her; 2d—should that condition be fulfilled it was subject to the other resolutory condition already noted, that she remained unmarried. Without any doubt, the testator's intention was that after Eufrosina accepted the voluntary usufruct she would still remain a widow so as to be able to be substituted for Clotilde in the usufruct of Cayure. And this is so because had she accepted the voluntary usufruct and thereafter remarried, the resolutory condition would have been fulfilled and she would have lost her right to the voluntary usufruct. Section 441, paragraph 2, *supra*, footnote 5. This means that in that case, she would not be "still enjoying the usufruct granted to her herein" that is, the voluntary usufruct, and she would have no right, therefore, to the Cayure usufruct.

There is a further reason for holding that when the testator spoke of "still enjoying the usufruct granted to her herein" he was referring to the voluntary usufruct. Section

makes it invulnerable to any encumbrance. The surviving spouse enjoys the usufruct, purely, simply and indeterminately by provision of law, not by the will of the testator; thus while he lives, he is protected by said right without any juridical restriction."

765. of the Civil Code authorizes the heirs to "satisfy the surviving spouse for his or her part of usufruct, assigning to him or her a life annuity, or the proceeds from specified property, or a sum in cash, making a mutual agreement, and, in the absence thereof, by virtue of a judicial mandate." By virtue thereof, the voluntary heirs in this case could have satisfied the widow for her usufructuary quota by one of the means provided in the afore-cited section. 14 Scaevola, *op. cit.*, 813 *et seq.;* 6 Manresa, *op. cit.*, 597 *et seq.*[11] Had they done so, the widow of Santiago would not have been enjoying her legal usufruct at Clotilde's death, since in the case provided for by the aforesaid § 765, the rights and obligations of the usufruct do not reside with the surviving spouse. Manresa, *op. cit.*, 602.[12] The testator could have foreseen the possibility of said situation, but he made no provisions therefor. It was not necessary. He was sure that she would accept the voluntary usufruct, rendering the aforesaid § 765 inapposite, and that she would substitute Clotilde at his death, if she remained a widow.

Inasmuch as the condition precedent did not materialize upon her accepting the widow's usufructuary quota, her right to the usufruct in Cayure at Clotilde's death disappeared then and there. Therefore, the second condition could not be fulfilled because it depended on the first. Thus, when Clotilde died the usufruct and the naked property merged into what was up to that time the naked property.

The trial court, however, held that those conditions were eliminated by the unanimous consent of the voluntary heirs as voiced in the partition deed. We are convinced that

[11] Roca Sastre believes that prior to the fulfillment by the heirs of § 765, the concept of usufruct will have served only as a standard or element of valuation of the legal portion of the surviving spouse. *Revista de Derecho Privado,* Vol. XXVIII, p. 185, footnote 78, at p. 208.

[12] "If the usufructuary right is substituted by any of the settlements to which § 838 [equivalent to § 765 of our Code], refers, the rights and obligations of the usufruct do not reside in the surviving spouse, and instead will have the special powers for each case." (6 Manresa, *op. cit.*, pp. 602, 603.)

there was no such elimination of the conditions imposed by the testator. The eleventh section of the first clause of the deed does not have the scope attributed to it by the appellee and the trial court. That clause appears at the head of the transactions of the partition deed which is known in practice as the *premises*. The premises "are the basis of facts and of law on which the whole division of the inheritance estate hinges, such as the death of the testator, the number and kind of heirs, the testamentary provisions, the general rules of law which are applicable, and as a whole, everything that serves to justify the transaction." 5 Valverde, *op. cit.*, 587. See also, 8 Colin y Capitant, *op. cit.*, 441. Now then, may one of those premises alter the express will of the testator? No. We have already seen that the testamentary provisions are included among such premises. This does not mean that the whole will has to be copied there. No does it mean that upon referring to the testamentary provisions, the testator's will was altered. As a matter of fact it was not. In Clause 1 of the Partition Deed the parties set forth that Florencio Santiago y Rivera died "under open will executed before the notary with license No. 178, on September twenty-nine, nineteen twenty three, whereby he made the following provisions:" and then follow those provisions, some, not all, verbatim, among which we find the provision concerning the usufruct of the "Cayure" farm, after his brother Clotilde died. That first clause refers therefore to the provisions made by the testator and not to the agreement of the parties. It is so much so, that when the usufruct in the "Cayure" farm was adjudicated to Don Clotilde it was stated in the award, paragraph 13, that the property was subject to the provision made by the testator in § 21 of the will, which is copied therein verbatim. In that section, as we have seen, when the testator refers to the widow's usufruct, he does not say "her usufruct" but "the usufruct granted to her herein," that is,

the usufruct left by will. Nor do we give the "Twelfth" [13] clause of the Deed of Partition the scope given to it by the appellee. That clause is not a pact or an agreement between the widow and the other voluntary heirs to the effect that the legal usufruct accepted by the widow is the usufruct granted to her by the testator. It was the clear and manifest will of the testator that should his widow accept the usufruct left by will, she would enjoy it during her lifetime if she remained a widow or until she remarried. Now then, did the widow agree in that clause to lose the usufruct adjudicated to her if she remarried? She did not. In that event, the voluntary heirs could not avail themselves of that clause to deprive the widow of her usufruct, since no agreement to that effect appears from said clause.

We shall now consider the defenses raised by Eufrosina and which she again raises on appeal. The first defense is that the appellants are precluded from going against their own acts, citing to that effect paragraphs 2 and 3 of § 101 of the Law of Evidence (§ 463 of the Code of Civil Procedure). However, the appellee assumes, through that defense, the erroneous position that in the partition deed ". . . the right of the widow appellee to enjoy the usufruct over the Cayure farm at his [Clotilde Santiago] death was recognized." But we have already seen that such was not and could not be the effect of the partition deed. And we find nowhere such recognition in favor of Eufrosina. Besides, it has not been shown that Eufrosina has performed any action resting on that presumptive "recognition," that she assumed a different position thereby impairing her own

[13] That clause reads:
"Twelfth. For the sake of clarity Mrs. Cianchini sets forth that in the present partition she has received her usufructuary quota in the amount determined by law, and that she was prompted to make that decision having in mind that the decedent, Florencio Santiago, very clearly stated in his will and by clause nineteen, his desire to give her an additional portion in that sense, granting her ample authority in the management of the usufructuary property, and should she fail to do so, she would not be complying with the will of the deceased."

right to the extent of rendering applicable the doctrine of estoppel invoked. *Mercado* v. *Mercado*, 66 P.R.R. 36, 88.

The appellee further alleges that the partition deed is an entirety, and that the afore-cited § 11 can not be declared void, considering the rest of the partition valid. She cites to that effect the case of *McCormick* v. *McCormick*, 64 P.R.R. 283, 287, where we repeat that ". . . A partition deed, interlocked as it is, must be an entirety. At least one who relies on the destruction of a part must show that that part can be segregated without destroying the whole." The appellee again assumes the position, entirely incorrect, that "all the interested parties acted, accepted and ratified, as an integral part of the partition, the usufructuary right or interest of the widow in the Cayure farm . . . ." We have already seen that that was not the effect of the twelfth clause of the partition. And it is not necessary that we go back to the *McCormick* case already cited, since we are not declaring that clause of the partition invalid.

The appellee further alleges that by contesting the effectiveness of paragraph 21 of the will the appellants are violating the prohibition imposed by the testator in paragraph 22 of the will which provides:

"He declares: that for the remainder of all his property, actions and rights he names as his sole and universal heirs his brothers and sisters, Clotilde, Teresa, Dolores, Rosenda, María and Josefa Santiago y Rivera so that they distribute it among themselves in equal shares and in full harmony, like good brothers and sisters, without causing any discussions nor disagreements, but in the very doubtful case that any or some should file or intend to file suit or refuse to sign and subscribe the deeds and other documents essential to the complete termination of the will, or refuse to appear at the necessary council or meeting of the family, without reasonable excuse, it shall be understood that the one who does such thing or things shall be considered by my express will without right to the inheritance and as though I had not designated him a heir and his share of the estate shall accrue to the portion of each of the other heirs who have complied with the wishes of the testator."

However, we must repeat that the appellants are not challenging the effectiveness of paragraph 21 of the will. They, as well as Eufrosina, wish to make clear the intention of the testator in drafting that clause in order to obey his will. Actually, the appellants could also allege the same thing as to Eufrosina. But both parties are claiming what they legitimately believed belongs to them. And it has been held that a clause which deprives a person who files suit of his inheritance or of a legacy, is no bar to his claim of what legally belongs to him. Judgment of the Supreme Court of Spain, commented on in 30 *Revista de Derecho Privado* 876, 878, and others therein cited; 8 Colin y Capitant, *op. cit.*, 298; 3 De Diego, *op. cit.*, 131.

 The appellee further alleges that having executed the partition deed on April 20, 1925 and that since "the claim or complaint of the voluntary heirs is obviously intended to affect, contest or render ineffective the pacts or agreements of recognition, acceptance, and ratification contained in the partition deed" such claim has prescribed, pursuant to § 1253. If we should hold that the latter section is applicable to this case, it would result that we could not settle the claims of the opposing parties since the same argument could be adduced by the appellants as to Eufrosina. But the appellee insists in assuming the incorrect position that the appellants are contesting the agreement made in the partition deed. And we have already seen that that is not the case. Besides, the right of the appellants to merge the usufruct into the naked property—which is the right claimed herein—originated at Clotilde's death on January 9, 1949. It was not until then either that Eufrosina could claim her alleged usufructuary right. Therefore, that date is the one to be considered as regards prescription. And since the appellants brought this action on July 15, 1949 the action has not prescribed. Section 1869. 12 Manresa, *op. cit.*, 945.

Finally the appellee alleges that "the challenge to paragraph 21 of the will has likewise prescribed, because 15

years have elapsed." To this we only have the same answer we gave regarding the former defense, that is, that the appellants at no time have challenged paragraph 21 of the will, but rather have tried to make it valid. Furthermore, when the parties brought their claims little more than six months had only elapsed from the date when they could be validly brought, that is, from Clotilde's death, on January 9, 1949. The appellee is therefore incorrect.

The judgment appealed from will be reversed and another rendered declaring that the rents deposited belong to the appellants who are now the owners in full of the Cayure property.

Mr. Justice Sifre concurs in the result.